IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN W. BANKS, | ) | Case No. 1:18cv2844 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| MIKE DEWINE, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.    Introduction

Kevin W. Banks is currently under Ohio Adult Parole Authority supervision, having

served an aggregate two year sentence for convictions of voyeurism and tampering with

evidence.[1]  Banks petitions the court for a writ of habeas corpus under 28 U.S.C. § 2254,

contending that the state courts violated his constitutional rights in *State v. Banks,* Case No.

16CR0369, Medina County Court of Common Pleas.[2]  ECF Doc. 1.  Respondent, former

Attorney General (now Governor) Mike DeWine[3], filed an answer/return of writ (ECF Doc. 18),

and Banks filed a traverse.  ECF Doc. 20.

---

[1] Offender search result as of June 3, 2020.

[2] Respondent does not argue that Banks's release from custody precludes him from filing a writ.  Banks dedicates much of his Traverse to arguing this point.  However, because there is no question that he is permitted to petition the court for habeas corpus, I need not further address that issue in my report.

[3] Respondent, Ohio's attorney-general, has filed an answer/return of writ, but states that it would have been better for Banks to file his petition naming the Ohio Parole Authority as respondent because that agency has control over Banks  I have referred to respondent in this report as Respondent DeWine.

Because Banks's claims are procedurally defaulted and/or lacking in merit, I recommend that his claims be DISMISSED and his petition for writ of habeas corpus be DENIED.

## II.     State Court History

### A.     Trial Court

On June 29, 2016, a Medina County grand jury indicted Banks, charging him with one count of voyeurism in violation of Ohio Rev. Code § 2907.08(C) and one count of tampering with evidence in violation of Ohio Rev. Code § 2921.12(A)(1).  ECF Doc. 18-1 at 6.  Banks pleaded not guilty by reason of insanity.  ECF Doc. 18-1 at 8-9.  After receiving the results of a competency and sanity evaluation, the trial court found Banks competent to stand trial and that Banks was not suffering from a severe mental disease or defect at the time of the alleged offense. ECF Doc. 18-1 at 13.

On September 26, 2016, Banks filed a motion for relief from prejudicial joinder because he wanted to testify on the tampering with evidence charge but assert his right to remain silent on the voyeurism charge.  ECF Doc. 18-1 at 14-18.  The trial court denied Banks's motion.  ECF Doc. 18-1 at 20.

On October 31, 2016, Banks waived his right to a jury trial and elected to be tried by the court on the voyeurism charge.  ECF Doc. 18-1 at 21.  On November 2, 2016, the jury found Banks guilty of tampering with evidence.  ECF Doc. 18-1 at 22.  On November 4, the trial court found him guilty of voyeurism.  ECF Doc. 18-1 at 24.  The trial court sentenced Banks to a 9-month prison term for voyeurism and a 24-month prison term for tampering with evidence.  The sentences were to be served concurrently.  ECF Doc. 18-1 at 25.

2

## B.      Direct Appeal

Banks appealed his convictions to the Ninth District Court of Appeals, Medina County.

ECF Doc. 18-1 at 27;  *State v. Banks,* 9th Dist. No. 16CA00844-M, 2017-Ohio-8777, 2017 WL

0662851.  Through new counsel, Banks asserted the following assignments of error:

> 1.  The evidence was insufficient to support the jury verdict of "guilty" as
> to the tampering with evidence count and the trial court's verdict of
> guilty as to the voyeurism count of the indictment, and the appellant's
> convictions as to both counts were against the manifest weight of the
> evidence.
>
> 2.  Appellant was denied a fair trial where, contrary to Ohio Rev. Code §
> 2907.02(D), Evid. R. 402, Evid. R. 403(A), and Evid. R. 404(B), the
> trial court permitted the State to introduce unfairly prejudicial
> testimony and evidence concerning appellant's alleged prior other acts.
>
> 3.  The trial court erred to the prejudice of appellant by denying his
> pretrial joinder of offenses under Crim. R. 14.

ECF Doc. 18-1 at 43.  The state filed a brief.  ECF Doc. 18-1 at 72.  On December 4, 2017, the

Ohio Court of Appeals affirmed the judgment of the trial court.  ECF Doc. 18-1 at 102.

On December 26, 2017, Banks filed a *pro se* notice of appeal with the Ohio Supreme

Court.  ECF Doc. 18-1 at 194.  On the same day, Banks filed a motion for a stay of the Ohio

Court of Appeals' decision until it had ruled on his motion for reconsideration and his motion to

certify a conflict.  ECF Doc. 18-1 at 196.  On January 22, 2018, the Ohio Supreme Court

dismissed Banks's jurisdictional appeal for failing to prosecute his appeal with the requisite

diligence because he failed to file a timely memorandum in support of jurisdiction.  ECF Doc.

18-1 at 216.

## C.      26(A) Application for Reconsideration and Motion to Certify Conflict

On December 7, 2017, Banks filed a, *pro se*, application for reconsideration of his appeal

pursuant to App. R. 26(A).  ECF Doc. 18-1 at 119.  On December 18, 2017, Banks moved to

certify a conflict to the Ohio Supreme Court.  ECF Doc. 18-1 at 131.  He argued that the Ninth District Court of Appeals' judgment conflicted with *State v. Staley,* 139 Ohio St.3d 339, 2014-Ohio-2129; *City of Middletown v. Reuss,* 12th Dist. Nos. CA2015-06-109, CA2015-06-122, 2016-Ohio-996; and *State v. Million,* 63 Ohio App.3d 349, 578 N.E.2d 869.  ECF Doc. 18-1 at 133.  The State filed a brief in opposition and moved to dismiss the motion to certify a conflict. ECF Doc. 18-1 at 159.  On February 12, 2018, the Ohio Court of Appeals denied both of Banks's motions.  ECF Doc. 18-1 at 191.

On March 29, 2018, Banks appealed to the Ohio Supreme Court.  ECF Doc. 18-1 at 402. The state filed a memorandum in opposition to jurisdiction.  ECF Doc. 18-1 at 419.  On June 6, 2018, the Ohio Supreme Court declined jurisdiction pursuant to S.Ct.Prac.R. 7.08(B)(4).  ECF Doc. 18-1 at 434.

### D.      Post-Conviction Motions

On October 16, 2017, Banks filed a pro se petition to vacate or set aside sentence and requested an evidentiary hearing.  ECF Doc. 18-1 at 217.  Banks argued that the trial court violated his due process rights by failing to rule on his Crim. R. 29 motion.  On October 25, 2017, the trial court dismissed Banks's petition for post-conviction relief because his failure to raise the claim on direct appeal meant it was barred by *res judicata*.  ECF Doc. 18-1 at 223.

On March 1, 2018, Banks filed a motion to amend his petition for post-conviction relief, based on newly discovered evidence, and a motion to compel additional discovery in the Ohio Court of Appeals.  ECF Doc. 18-1 at 226.  The state filed a brief in opposition.  ECF Doc. 18-1 at 232.  Banks also filed an application to reopen his appeal pursuant to App. R. 26(B).  The state filed an opposition (ECF Doc. 18-1 at 257) and Banks filed responses.  ECF Doc. 18-1 at 267, ECF Doc. 18-1 at 272.  The Ohio Court of Appeals denied Banks's motion to amend post-

conviction relief motion, his motion to compel, and his motion to reopen his appeal. ECF Doc. 18-1 at 277.

On March 19, 2018, Banks filed a pro se motion for relief from judgment pursuant to Civ. R. 60(B). He argued that his recent review of the trial transcript revealed that the prosecutor had misstated facts during his argument. Banks also filed a motion to modify his sentence. ECF Doc. 18-1 at 289. The state filed a brief in opposition to Banks's motions (ECF Doc. 18-1 at 297) and Banks filed a reply. ECF Doc. 18-1 at 304. On April 23, 2018, the trial court found that Banks's trial transcript was not "newly discovered evidence," and dismissed his motion for relief from judgment. ECF Doc. 18-1 at 328.

### E.      Writ of Procedendo

On November 29, 2017, Banks petitioned the Ohio Court of Appeals for a writ of procedendo seeking an order compelling the trial court to proceed to final judgment in 16CR0369. ECF Doc. 18-1 at 329. The state filed a motion to dismiss or, in the alternative, a motion for summary judgment. ECF Doc. 18-1 at 334. On March 8, 2018, the Ohio Court of Appeals dismissed the petition because Banks failed to file an affidavit listing all civil actions he had filed in the previous five years, as required by Ohio Rev. Code § 2969.25. ECF Doc. 18-1 at 400.

### F.      Ohio Supreme Court Habeas Petition

On October 23, 2017, Banks filed a habeas petition in the Ohio Supreme Court (ECF Doc. 20-9), which was dismissed *sua sponte* on December 6, 2017. *Banks v. Rhonda R. Richard, Warden,* 12/6/2017 Case Announcements, 151 Ohio St.3d 1450, 2017-Ohio-8842.

III.    **Federal Habeas Corpus Petition**

Banks filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 on December 6,

2018.  Banks has asserted two grounds[4] for relief:

> **GROUND ONE:**  Insufficiency of Evidence/Proof beyond a reasonable doubt.
>
> **Supporting Facts:**  Count One: - no pictures/video – no proof of nudity – no proof of sexual purpose – appropriate non-sexual explanation (raising arm to use phone as a mirror in own dressing room.)
>
> **GROUND TWO:**  Prosecutorial Misconduct.
>
> **Supporting Facts:**  Prosecutor bullied/badgered defendant using his competency sanity report against him.

Respondent DeWine opposes Banks's claims and moves to dismiss the claims and deny the

petition.  ECF Doc. 18.  Banks has filed a traverse in support of the claims asserted in his

petition.  ECF Doc. 20.  Banks has also filed a motion for findings of facts and conclusion of law

wherein he continues to assert the arguments stated in his traverse.  ECF Doc. 26.

IV.    **Facts**

We begin with a brief recitation of the factual findings of the Ohio courts.  The Ohio

Court of Appeals summarized the relevant facts as follows:

> {¶ 2}  In June of 2016, seventeen-year-old H.E. went into a fitting room in the Medina Target to try on some bikinis and dresses.  Mr. Banks entered the dressing room area five seconds after H.E. and chose a dressing room directly across from her.  When H.E. saw clothes already piled up in her room and decided to switch to a different room, Mr. Banks also switched to another room, again directly across from her. While in a state of undress, H.E. looked in her fitting room mirror and saw an arm holding a cell phone up above Mr. Banks' fitting room door with the phone's camera facing her. She quickly clothed herself, snuck out of the fitting room, and told a store employee.

---

[4] Banks crossed out "Ground Two" on the petition form submitted to the court.  ECF Doc. 1 at 7.
Respondent discusses this in his return and argues that Banks only asserted two grounds in his petition.
ECF Doc. 18 at 10.  I agree that this is the most logical reading of Banks's petition and Banks has not
refuted this interpretation in his traverse.  ECF Doc. 20.   For this reason, I have analyzed and reported on
the *two* grounds for relief asserted in Banks's petition.

{¶ 3}   Mr. Banks left his own fitting room twenty-five seconds after H.E. left
hers, looked toward H.E. and the employee while he was walking away, and
quickly headed toward the store's exit after H.E. said, "That's the man."  He left
the store through the shopping cart only doors, removed the tank top he was
wearing, and used it to cover up his rear license plate number.  By chance, a
retired police officer was in the store's parking lot and saw Mr. Banks running out
of the store while removing his shirt, so he followed Mr. Banks' vehicle and
called police.  A few minutes later, Mr. Banks pulled into a driveway, exited his
vehicle to retrieve his tank top, and then re-entered the vehicle and resumed
driving until a uniformed officer conducted a traffic stop of the vehicle.

{¶ 4}   Mr. Banks was arrested and charged with voyeurism and tampering with
evidence. He waived his right to a jury trial on the voyeurism count only. The
case proceeded to trial whereby a jury heard and decided the tampering with
evidence count and the trial court judge heard and decided the voyeurism count.
Mr. Banks was found guilty of both charges and sentenced to an aggregate total of
twenty-four months in prison.

*State v. Banks,* 9th Dist. No. 16CA00844-M, 2017-Ohio-8777, 2017 WL 0662851.  ECF Doc.

18-1 at 103.  These state court factual findings are presumed correct unless Banks rebuts them by

clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Moore v. Mitchell,* 708 F.3d 760 (6th

Cir. 2013).

## V.   Procedural Default

### A.   Parties' Arguments

Respondent argues that Banks's Ground One evidence insufficiency claim was

procedurally defaulted because Banks never obtained one full round of appellate review in the

Ohio courts.  This occurred because Banks failed to file a timely memorandum in support of

jurisdiction with the Ohio Supreme Court.  Respondent argues that Banks's Ground Two claim

for prosecutorial misconduct was procedurally defaulted because Banks never raised it claim in

state court.

Banks does not really respond to these arguments.  He argues that there may be some

question about whether he exhausted his claims because he raised the relevant facts in the state

7

courts, but he does not cite any authority supporting this argument. ECF Doc. 20 at 15-16, ¶14. Nor is the court aware of any. In fact, the applicable law provides that, to fairly present a claim to a state court, a petitioner must assert both the factual *and legal* basis for his or her claim. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

**B.    Law & Analysis**

Before [a federal court may] reach the merits of a habeas petition, . . . [it must] review whether the petitioner has satisfied the [two] procedural requirements for litigating his federal claim in state court." *Gerth v. Warden, Allen Oakwood Corr. Inst.*, 938 F.3d 821, 826 (6th Cir. 2019) (citing *Bickham v. Winn*, 888 F.3d 248, 250-51 (6th Cir. 2018), and *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000)). "First, the petitioner must [have] exhaust[ed] all available opportunities to pursue his claim in state court before he may litigate that claim in federal court." *Id.* (noting that this requirement, rooted in the principles of comity and federalism, seeks to "avoid the unseemly result of a federal court upsetting a state court conviction without first according the state courts an opportunity to correct a constitutional violation" (internal quotations and alterations omitted)); 28 U.S.C. § 2254(b)(1)(A). The petitioner must have given the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

"Second, and relatedly, the procedural default doctrine bars [federal habeas] review if the petitioner has not followed the state's procedural requirements for presenting his claim in state court." *Gerth*, 938 F.3d at 827. A federal court usually may not review a state prisoner's habeas claim if (1) the prisoner broke a state procedural rule, (2) the state court enforced the rule, and

(3) the procedural forfeiture was an adequate and independent ground for denying relief.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Banks's Ground One evidence insufficiency claim was procedurally defaulted under state law because he failed to file a timely memorandum in support of jurisdiction in his appeal to the Ohio Supreme Court within the forty-five-day deadline set by S. Ct. Prac. R. (A)(3)(b).   The filing deadline is an adequate and independent state procedural rule, and the Ohio Supreme Court enforced the rule.  *See Stone v. Moore,* 644 F.3d 342, 346 (6th Cir. 2011); *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  Banks's Ground One claim was also procedurally defaulted because he failed to complete one full round of state appellate review, and he now may no longer pursue it. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006); *see also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *O'Sullivan,* 526 U.S. at 845.

Banks's Ground Two prosecutorial misconduct claim was not raised in any appeal to the Ohio courts.  Banks's petition indicates that he raised this issue a his habeas petition to the Ohio Supreme Court (ECF Doc. 1 at 9), but that was a separate civil case filed in the state courts.  It was *sua sponte* dismissed by the Ohio Supreme Court with no explanation.  *Banks v. Rhonda R. Richard, Warden,* 12/6/2017 Case Announcements, 151 Ohio St.3d 1450, 2017-Ohio-8842.  But it is apparent that such a habeas petition could have been dismissed because Ohio habeas petitions may not raise issues that could have been raised on direct appeal.  See *Davie v. Edwards,* 80 Ohio St. 3d 170, 685 N.E.2d 228(1997); *Walker v. Maxwell,* 1 Ohio St. 2d 136, 205 N.E.2d 394(1965).

Banks's claims were procedurally defaulted and should be dismissed unless he can show that his default may be excused such that this court should consider the merits of his claims.

### 1.    Grounds to Excuse Procedural Default

Procedural default may be excused on two bases.  First, the petitioner's procedural default may be excused if he shows cause and prejudice, *i.e.* that: (1) something external to the defense, which cannot be fairly attributed to him, prevented him from complying with the state procedural rule; and (2) actual prejudice resulted from the alleged constitutional violation. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  In assessing prejudice, the court assumes that the petitioner has stated a meritorious constitutional claim and proceeds to discern whether a different verdict would have resulted absent the assumed constitutional error.  *Moore v. Carlton*, 74 F.3d 689, 691-92 (6th Cir. 1996); *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003); *see also United States v. Frady*, 456 U.S. 152, 170-72 (1982).

Second, a procedural default may be excused if denying review of the petitioner's claims would result in a "fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.  "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).  Actual innocence means "factual innocence, not mere legal insufficiency," *Bousley v. United States*, 523 U.S. 614, 623 (1998), and a claim of actual innocence must be supported with "new reliable evidence . . . that was not presented at trial," *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

### 2.    Cause and Prejudice

Banks has not offered any explanation, much less any "cause external to the defense," for (i) his failure to file a timely memorandum in support of jurisdiction (or to fully exhaust) his Ground One claim or (ii) for his failure to raise his Ground Two claim on direct appeal. Ineffective assistance of counsel – or lack of counsel – cannot establish cause because Banks was

only entitled to an attorney through his first direct appeal. *See Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987); *Ross v. Moffit,* 417 U.S. 600 (1974); *Wainwright v. Torna,* 455 U.S. 586 (1982)(when there is no constitutional right to counsel there can be no deprivation of effective counsel). Nor can ignorance of the law excuse procedural default. *Bonilla v. Hurley,* 370 F.3d 494, 498 (6th Cir. 2004) (petitioner's ignorance of the law and procedural requirements is not enough to constitute cause to excuse procedural default in habeas corpus petition under 28 U.S.C. § 2254). Banks has not argued cause sufficient to excuse the procedural default of his claims. Because Banks has not established cause for his procedural default, we are not required to address whether he was actually prejudiced by the alleged constitutional violations asserted in the Ground One and Ground Two claims. *Simpson v. Jones,* 238 F.3d 399, 409 (6th Cir. 2000).

### 3.      Actual Innocence

A federal court may also review a procedurally defaulted claim, even in the absence of a demonstration of cause and prejudice, to correct "a fundamental miscarriage of justice," as when the petitioner is actually innocent. *Coleman v. Thompson,* 501 U.S. 722, 748, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991) (quoting *Engle v. Isaac,* 456 U.S. 107, 135, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982)). It is well-established that "'[a]ctual innocence' means factual innocence, not mere legal insufficiency." *Carter v. Mitchell,* 443 F.3d 517, 538 (6th Cir. 2006) (citing *Bousley v. United States,* 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998)). For a petitioner to establish "actual innocence," that petitioner must present new evidence to the habeas court. *Gulertekin v. Tinnelman-Cooper,* 340 F.3d 415, 427 (6th Cir. Ohio 2003). This "new evidence [will] not rise to the standard of establishing his actual innocence [if] a reasonable juror still could have found [petitioner] guilty [beyond a reasonable doubt] even after considering [the] new evidence." *Jells v. Mitchell,* 538 F.3d 478, 507 (6th Cir. 2008). New evidence cannot

11

excuse procedural default except when that evidence is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Sellers v. Ward,* 135 F.3d 1333, 1338 (10th Cir. 1998) (citing *Schlup v. Delo*, 513 U.S. 298, 324, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)).  New evidence, consequently, can only excuse procedural default in "extraordinary" cases.  *Carter,* 443 F.3d at 538.

Banks argues that the state failed to produce sufficient evidence to support the elements of voyeurism and tampering with evidence.  As is further explained below, Banks's argument lacks merit.  At its core, Banks's argument is not that the evidence was insufficient, but that the evidence should have been interpreted differently by the triers of fact.  Banks has not presented any new evidence to prove his actual innocence.  Instead, he argues that the state failed to prove specific elements of the two charges of which he was convicted, an argument that was rejected by the trial court and the Ohio Court of Appeals.  Because Banks's claims are procedurally defaulted and because he has neither demonstrated cause and prejudice to excuse the default nor established his actual innocence, I recommend that his Ground One and Ground Two claims be dismissed as procedurally defaulted.

## VI.  Merits Review– Ground One

Even though Banks's claims were procedurally defaulted, it can readily be seen that his Ground one claim (which was raised as an issue in his direct appeal to the Ohio Court of Appeals) also lacks merit.  Thus, should the Court disagree with my conclusions concerning procedural default and prefer to address the Ground One claim on the merits, I have included the following analysis.

12

### A.    Parties' Arguments

Respondent DeWine also argues that Banks's Ground One claim fails on the merits.  ECF Doc. 18 at 21-39.  He argues that sufficient evidence supported both charges of which Banks was convicted, and that his Ground One claim fails on the merits under the standards of AEDPA review.  For the most part, Banks's traverse continues to raise the factual arguments he asserted in his direct appeal on the insufficiency of the evidence.  ECF Doc. 20 at 18-31.  The parties' arguments are further addressed below.

### B.    AEDPA Standard for Merits Review

The Antiterrorism & Effective Death Penalty Act of 1996 ("AEDPA"), codified in part at 28 U.S.C. § 2254, established a standard of review that gives significant deference to the decisions made by the state courts on the federal constitutional issues raised in a habeas corpus petition.  *See Penry v. Johnson*, 532 U.S. 782, 791, 121 S. Ct. 1910, 150 L. Ed. 2d 9 (2001); *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir. 2008).  AEDPA imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 154 L. Ed. 2d 279, (2002) (per curiam).

When the claim presented in a habeas corpus petition has been presented to and decided on the merits by the state courts, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts in light of the evidence that was presented.  28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any

claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In applying this statute, the Supreme Court has held that" [t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one."  To obtain habeas corpus relief, a petitioner must show the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement."  *Bobby v. Dixon*, 565 U.S. 23, 24, 132 S. Ct. 26, 181 L. Ed. 2d 328 (2011), quoting *Harrington v. Richter*, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).  This standard is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. at 102-103 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 50, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment)).  In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.*, quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004).  "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007).

C.      Discussion

Insufficient evidence claims are cognizable on habeas corpus review.  *Jackson v. Virginia,* 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *In re Winship,* 397 U.S. 358 (1970); *Johnson v. Coyle,* 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990) (*en banc*).  States have the power to determine the elements of criminal offenses, *see Engle v. Isaac,* 456 U.S. 107, 119-120 (1982); *Jackson,* 443 U.S. at 324, but the Due Process Clause prohibits states from convicting "without proving the elements of that crime beyond a reasonable doubt," *Fiore v. White,* 531 U.S. 225, 228-229 (2001).  Thus, when a habeas petitioner challenges the sufficiency of the evidence relied on to convict him, he essentially argues that there was some element of required proof missing.  Absent evidence on every required element of a charge a conviction may not stand.

In *Jackson* the Supreme Court held that, when reviewing the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson,* 443 U.S. at 319.  "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the correct guilt or innocence decision, but rather whether it made a rational decision to convict or acquit."  *Herrera v. Collins,* 506 U.S. 390, 402 (1993).

Because both *Jackson* and AEDPA apply to Banks's evidence sufficiency claim, federal habeas review requires deference at two levels.  "First, deference should be given to the trier of fact's verdict, as contemplated by *Jackson;* second, deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA."  *Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Tucker v. Palmer,* 541 F.3d 652, 656 (6th Cir. 2008)). The Sixth Circuit has explained:

When reviewing whether the state court's determination was "objectively unreasonable," this court necessarily engages in a two-step analysis.  First, we must ask whether the evidence itself was sufficient to convict under *Jackson*.  The inquiry ends if the panel determines that there was sufficient evidence to convict [the petitioner].  If we find that the evidence is insufficient to convict, we must then apply AEDPA deference and ask whether the state court was "objectively unreasonable" in concluding that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt.

*Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir. 2010).  The Sixth Circuit has observed that "'[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'"  *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Banks argues that the state failed to produce evidence on the necessary elements of the voyeurism and tampering with evidence charges.  To begin, there can be no dispute as to whether the Ohio Court of Appeals applied the proper standard of review:

Sufficiency of the Evidence

{¶ 7}  "A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo."  *State v. Spear*, 9th Dist. Summit No. 28181, 2017-Ohio-169, ¶ 6, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).  "Sufficiency concerns the burden of production and tests whether the prosecution presented adequate evidence for the case to go to the jury." *State v. Bressi*, 9th Dist. Summit No. 27575, 2016-Ohio-5211, ¶ 25, citing *Thompkins* at 386, 678 N.E.2d 541. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.  However, "we do not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 80 N.E.3d 1163, 2017-Ohio-73, ¶ 10.

The Ohio Court of Appeals then described the elements for those charges and the evidence in the trial court record supporting them.

### 1. Voyeurism

Regarding Banks's voyeurism conviction, the Ohio Court of Appeals stated:

{¶ 8} Mr. Banks was convicted of voyeurism under R.C. 2907.08(C), which states:

> No person, for the purpose of sexually arousing or gratifying the person's self, shall commit trespass or otherwise surreptitiously invade the privacy of another to videotape, film, photograph, otherwise record, or spy or eavesdrop upon the other person in a state of nudity if the other person is a minor.

R.C. 2901.22(A) states:

> A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature.

{¶ 9}  H.E testified that she was seventeen years old in June of 2016 when she went to Target to shop for some new dresses and bikinis.  She went to the fitting room area and noticed an older man who seemed to be "dressed as a teenager" wearing a striped tank top and shorts who "kind of followed [her] in there."  She later identified the man in court as Mr. Banks. H.E. went into the second fitting room on the left, while Mr. Banks went into the second fitting room on the right, directly across from her.  H.E. saw a lot of clothing already in her fitting room and thought someone may have recently left it to go get more clothes. She then changed rooms and went into the third fitting room on the left. Mr. Banks also changed rooms and entered the third fitting room on the right, again directly across from H.E. H.E. testified that Mr. Banks' room change "[was] the reason why I paid attention, because I thought it was very strange that he decided to change to the one right across from me."  H.E. began changing into a bikini in her fitting room.  Once she was undressed and in her underwear, she looked in the mirror and saw most of a forearm and a black cell phone above the door of the fitting room directly across from her with the camera facing her direction "as if he was trying to get as much angle into getting a picture of [her] as possible."

{¶ 10} H.E. testified that she immediately dropped to the ground and tried to remain calm without making any noise.  She grabbed the first dress within reach and clothed herself.  She quietly crawled underneath the door without opening it and went to inform the fitting room operator ("T.F.") who was working in the employee closet at the entrance to the fitting room area. H.E. whispered to T.F. what happened and T.F. immediately called her manager using her walkie-talkie. H.E. was scared and started crying.  Twenty-five seconds after H.E. left her fitting

room, Mr. Banks emerged from the fitting room area. H.E. said to T.F., "That's the man."

{¶ 11} The State entered several surveillance camera videos into evidence.  A surveillance video from outside the fitting room area shows H.E. entering the fitting rooms, followed closely by Mr. Banks merely five seconds later.  After a few minutes, H.E. can be seen coming out of the fitting room area and entering the room or closet at the entrance to the fitting room area, seemingly searching for a Target employee.  T.F. can then be seen coming out of the room and using her walkie-talkie.  Twenty-five seconds after H.E. comes out of the fitting room area, Mr. Banks exits the fitting room area while noticeably looking directly toward the room occupied by H.E. and T.F. as he walks away.  The testimony from multiple witnesses differed slightly as to whether Mr. Banks then walked briskly, jogged, or ran away from the fitting room area, and soon thereafter out of the store and into the parking lot.  The surveillance video shows him looking toward the fitting room closet and then visibly increasing his speed to a faster walk and eventually a slight jog as he moves out of view of the camera.  A second surveillance video from a camera at the store's entrance facing inward shows what appears to be Mr. Banks, although only his lower body and part of his shirt are visible, walking quickly from the back of the store and heading toward the store's front doors.  His pace again increases to a slight jog as the video abruptly ends.

{¶ 12} Target's leader on duty ("LOD") that day testified that T.F. notified her of the voyeurism incident via walkie-talkie.  As the LOD was leaving her office at the front of the store to head back to the fitting room area, she saw a man run out of the store.  Mr. Banks did not leave the store through the normal exit doors, but chose to leave through the shopping cart only doors, which T.F. testified is "unusual" because those doors are "just for carts."

{¶ 13} Mr. Banks argues that the State did not present sufficient evidence to prove that he surreptitiously invaded H.E.'s privacy to videotape, film, photograph, otherwise record, or spy or eavesdrop upon her.  He further argues that the State did not present sufficient evidence that his actions were done for the purpose of sexual arousal or gratification.

{¶ 14} "Surreptitious" is defined as "unauthorized and clandestine; done by stealth and without legitimate authority." Black's Law Dictionary (10th Ed.2014). The State presented evidence that Mr. Banks followed H.E. into the dressing room area, chose a room directly across from her, and then changed rooms once she changed rooms, so as to still be directly across from her.  While changing and in a state of undress, H.E. saw an arm holding a cell phone above Mr. Banks' fitting room door with the camera pointed at her, as if to get the best angle possible of her.  Therefore, we disagree with Mr. Banks' arguments and conclude that the evidence, if believed, established that Mr. Banks surreptitiously invaded H.E.'s privacy to videotape, film, photograph, otherwise record, or spy or eavesdrop upon her in her private fitting room with the use of his cell phone.

18

{¶ 15} As to the sexual arousal or gratification purpose element, courts have held that it "'may be inferred when there is no innocent, i.e., nonsexual, explanation for the offender's conduct.'" *State v. Goldblum*, 2d Dist. Montgomery No. 25851, 2014-Ohio-5068, ¶ 17, quoting *State v. Wilson*, 192 Ohio App.3d 189, 2011-Ohio-155, ¶ 47, 948 N.E.2d 515 (11th Dist.). *See also State v. Haldeman*, 2d Dist. Montgomery No. 18199, 2000 WL 1726858, *3, 2000 Ohio App. LEXIS 5409, *7 (Nov. 22, 2000) ("The fact that Defendant was neither in a state of undress nor had engaged in masturbation does not prevent a finding that his purpose was sexual gratification or arousal, if that can rationally be inferred from other evidence presented.")  The evidence presented established very unusual conduct by Mr. Banks surrounding the incident from which a purpose of sexual arousal or gratification could be inferred: He followed H.E. into the fitting room area five seconds after she entered, chose a fitting room directly across from her, changed rooms once she changed rooms so as to still be directly across from her, held his cell phone above his door with the camera facing H.E., and then left his fitting room twenty-five seconds after H.E. left her room.  Given Mr. Banks' secretive tactics and unusual conduct, we conclude that the trier of fact could have reasonably inferred that his actions were done for the purpose of sexual arousal or gratification. *See State v. Huffman*, 165 Ohio App.3d 518, 2006-Ohio-1106, ¶ 64, 847 N.E.2d 58 (1st Dist.)

{¶ 16} Upon review of the evidence presented in a light most favorable to the prosecution, we conclude that the State satisfied its burden of production as to the offense of voyeurism.  Furthermore, any rational trier of fact could have found all of the essential elements of voyeurism proven beyond a reasonable doubt.

*State v. Banks,* 9th Dist. No. 16CA00844-M, 2017-Ohio-8777, 2017 WL 0662851.  ECF Doc. 18-1 at 104-108.

Banks seems to believe the state was required to prove that he had taken pictures or video of the victim to establish an element of voyeurism.  ECF Doc. 20 at 15.  This argument is not based on the actual elements of Ohio's voyeurism crime, but on the original accusation of the victim and witness at the Target store.  Banks notes that the original 9-1-1 caller reported that there was a "guy in the fitting room taking pictures of little girls." *Id.*  He traces this original report to the police report.  He argues that, because the state did not actually produce any pictures or videos from his cell phone, there was insufficient evidence to convict him of voyeurism.  ECF Doc. 20 at 15-16.

The problem with Banks's argument is that the state was not required to produce pictures or videos to convict him of voyeurism.  The statute provides several ways that a victim's privacy may be invaded, including by "spy[ing] or eavesdrop[ping]."  Ohio Rev. Code § 2907.08(C).  The fact that the state did not prove the victim's or Target employee's exact statements is irrelevant.  This court is charged with deciding whether any rational trier of fact could have found *the essential elements of the crime as defined in the statute* beyond a reasonable doubt, not whether the state proved that the victim's or the initial 9-1-1 caller's statements were accurate.  Furthermore, Banks did not raise this argument in his direct appeal.

Banks's direct appeal did raise two arguments regarding the sufficiency of the voyeurism conviction: 1) that the state failed to prove that he "surreptitiously invaded [the victim's] privacy"; and 2) that he did so for the purpose of sexually arousing or gratification.  ECF Doc. 18-1 at 56-59.  Regarding the invasion of privacy element, Banks has not argued that the Ohio Court of Appeals misstated Ohio law.  Nor has he argued that certain key facts did not support the voyeurism conviction such as: 1) the victim's testimony that he came into the dressing room at the same time she did; 2) that he moved to a different dressing room shortly after she did and was directly across from her both times;  and 3) that his cell phone was pointed toward her dressing room.  Rather, Banks attempts to explain these facts in a light most favorable to *him.*  But in conducting an evidence sufficiency analysis, we are required to do the exact opposite: to examine the facts in the light most favorable *to the prosecution.*  After doing so, it is clear that any rational juror could have concluded beyond a reasonable doubt that Banks surreptitiously invaded the victim's privacy.  Thus, we are required to defer to the findings of the jury and judge who made the factual findings supporting Banks's convictions.

20

As to the second layer of review under AEDPA, the Ohio Court of Appeals cited Black's Law Dictionary's definition of "surreptitious" as: "unauthorized and clandestine; done by stealth and without legitimate authority."  The Ohio Court of Appeals' interpretation of Ohio's law binds this court.  *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005).  After considering this definition and the evidence submitted at trial, the Ohio Court of Appeals found that the evidence, if believed, supported a finding that Banks surreptitiously invaded the victim's privacy.  *State v. Banks,* ECF Doc. 18-1 at 107, 9th Dist. No. 16CA00844-M, 2017-Ohio-8777, 2017 WL 0662851.  For purposes of AEDPA review, we must ask whether the Ohio Court of Appeals' determination that there was sufficient evidence to permit a rational juror to find Banks guilty beyond a reasonable doubt was "objectively unreasonable."  *Stewart v. Wolfenbarger*, 595 F.3d at 653.  And the answer to this question is definitively no.  The Ohio Court of Appeals applied the correct standard and cited evidence supporting its finding that Banks had surreptitiously invaded the privacy of another.

As to the second challenged element, the sexual arousal or gratification element, the Ohio Court of Appeals cited Ohio law indicating this element may be "inferred when there is no innocent, i.e., nonsexual explanation for the offender's conduct." ECF Doc. 18-1 at 107.  Banks stated a nonsexual explanation for his behavior – that he was using his cell phone to see if a tank top showed off his new tattoo.  This *was* a nonsexual explanation, but the trier of fact was not required to believe it.  Instead, the trier of fact was entitled to believe the victim's allegation that Banks's cell phone was pointed at her, not at Banks's tattoo.  The trier of fact was also entitled to consider Banks's interest in pornography and compare that interest to the alleged events at Target.  The trier of fact was then permitted to infer that Banks was invading the victim's privacy for the purpose of sexual arousal or gratification.  Based on this evidence, it is clear that a

rational juror could have concluded beyond a reasonable doubt that Banks surreptitiously invaded the victim's privacy.

Banks argues that there was no direct evidence of this element, such as his semen, but such physical evidence was not required.  Because physical evidence is not always available for the sexual arousal or gratification element, Ohio law permits the trier of fact to infer this element. The Ohio Court of Appeals applied Ohio law and found that the evidence at trial was sufficient to support at least an inference of the sexual arousal or gratification element of voyeurism. There is no basis upon which we could conclude that the state court of appeals' decision - that there was sufficient evidence to convict Banks of voyeurism - was unreasonable.  Thus, under AEDPA, we are required to defer to that decision and must find this portion of Banks's Ground One claim lacks merit.

### 2.    Tampering with Evidence

Regarding Banks's tampering with evidence conviction, the Ohio Court of Appeals stated:

> {¶ 17} Mr. Banks was also convicted of tampering with evidence under R.C. 2921.12(A)(1), which states, in part: "No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation * * *."  "Likelihood is measured at the time of the act of alleged tampering." *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, ¶ 19, 11 N.E.3d 1175. "[I]t is not necessary for the State to set forth direct evidence of a tampering with evidence offense. 'Circumstantial evidence may suffice.'" (Citation omitted.) *State v. Glunt*, 9th Dist. Medina No. 13CA0050-M, 2014-Ohio-3533, ¶ 8, quoting *State v. Simpson*, 9th Dist. Lorain No. C.A. 11CA010138, 2012-Ohio-3195, ¶ 24. R.C. 2901.22(B) states:
>
>> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature.  A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense,

such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

Again, "[a] person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A).

{¶ 18} Target's LOD on the day of the incident testified that when she was radioed about the alleged voyeurism incident, she saw a man run out of the store and she followed him outside to try to get his license plate number.  She saw the man take off his tank top and throw it over the license plate of his "dark red, maroon truck."  Consequently, she was unable to obtain the license plate number.

{¶ 19} Retired police officer M.E. testified that he was in his vehicle in the Target parking lot when he saw Mr. Banks "sprinting out of the front of the store and * * * taking his shirt off at the same time."  M.E. saw Mr. Banks get into a maroon pickup truck.  Once he was able to get behind Mr. Banks, he noticed the license plate number on Mr. Banks' truck was covered by a shirt. M.E. called the police and followed Mr. Banks "at a comfortable distance so he wouldn't think that anybody was behind him."  Mr. Banks drove away and made multiple turns onto different streets, stopping once for a red light.  M.E. observed Mr. Banks pull into a driveway, exit his truck, retrieve the shirt that was concealing his license plate number, and put it back on himself to wear.  M.E. continued to follow Mr. Banks while staying on the phone with the police until a uniformed Medina police officer in a marked cruiser was able to conduct a traffic stop of Mr. Banks' truck.

{¶ 20} Medina Township police officer Cliff Nicholson testified that he conducted the traffic stop of Mr. Banks' truck.  He requested and received confirmation of the alleged voyeur's description over the radio and the information matched Mr. Banks.  Officer Nicholson asked Mr. Banks where he was coming from and Mr. Banks said, "Target."  He then asked Mr. Banks what he was doing at Target and Mr. Banks requested an attorney.  The officer handcuffed Mr. Banks and patted him down before removing a wallet, a black cell phone, and a soiled, sticky napkin from his pockets.

{¶ 21} Detective Joshua Grusendorf of Medina City police testified that he arrived at the traffic stop and spoke to Mr. Banks about the voyeurism incident in the rear of a police cruiser.  Mr. Banks told the detective that he had been "taking pictures of himself while he was in the dressing room at Target, that he had been trying on tank tops and was using his phone to view himself."  Mr. Banks also said that "he ran out of the store because he heard the female next to him, in the stall next to him, say something to the effect of, 'Oh, my goodness,' or something

23

to that effect." He told the detective that "he had an OVI and some other things, so he got scared and ran out of the store."

{¶ 22} Mr. Banks now claims that when he exited the dressing room and H.E. pointed at him, it instantly triggered his post-traumatic stress disorder ("PTSD") and sent him into a "panicked, trance-like state," whereby he walked away from the fitting room area at a brisk pace, exited the store through the shopping cart only doors, removed his tank top, covered his license plate number, and drove away in his truck. After driving for a few minutes, his "mind became clear again," so he pulled over, retrieved the tank top that was concealing his license plate number, and then continued on his way until he was pulled over by Medina police. He asserts that no Target employees or police officers stopped him while he was in the store or in the parking lot when he concealed his license plate number.

{¶ 23} Accordingly, Mr. Banks argues that the State failed to prove he had knowledge "that an official proceeding or investigation [was] in progress, or [was] about to be or likely to be instituted." He also argues that his concealment of the license plate number did not "impair its value or availability as evidence in such proceeding or investigation" because no investigation had commenced, the license plate number was only obstructed briefly for a couple minutes, and his *front* license plate number was never obstructed. Aside from these arguments, Mr. Banks has not otherwise challenged the propriety of his tampering-with-evidence conviction.

{¶ 24} Constructive knowledge of a pending or likely investigation is not imputed to the offender in a tampering with evidence charge. *State v. Barry*, 145 Ohio St.3d 354, 2015-Ohio-5449, 49 N.E.3d 1248, syllabus. "[M]erely establishing that the crime committed is an unmistakable crime is insufficient to prove that the accused knew at the time the evidence was altered, destroyed, concealed, or removed that an official proceeding or investigation into that crime was ongoing or likely to be instituted." *Id.* "Nonetheless, the intent required by R.C. 2921.12(A)(1) can be inferred by the defendant's words, actions, and demeanor *after* a crime has been committed." (Emphasis sic.) *State v. Price*, 9th Dist. Summit No. 28291, 2017-Ohio-4167, ¶ 18. In the case sub judice, the State had to prove that Mr. Banks knew an investigation into the voyeurism incident was pending *or likely* at the time he concealed his license plate number.

{¶ 25} The evidence presented at trial, if believed, established that Mr. Banks knew an investigation was likely, based on his actions immediately after the voyeurism incident occurred. Mr. Banks had just been holding his cell phone up above his fitting room door with the phone's camera facing into H.E.'s fitting room. Mr. Banks even admitted to Detective Grusendorf that he had been holding up his cell phone in the Target fitting room, although he claimed to only be viewing and taking pictures of himself. Once H.E. left her fitting room, Mr. Banks immediately left his own room merely twenty-five seconds later. As Mr.

24

Banks walked away, H.E. pointed him out to an employee and said, "That's the man." Mr. Banks' immediate response was to quickly flee the fitting room area and leave the store through doors not intended for use as an exit.  He ran through the parking lot and covered his license plate number with his shirt before driving away from the area.

{¶ 26} We conclude that a jury could have reasonably inferred from Mr. Banks' highly unusual conduct that he knew an investigation into the voyeurism incident was likely at the time he was concealing his license plate number. Moreover, Mr. Banks has provided us with no case law supporting his argument that an employee or police officer must stop an offender after he has allegedly committed a crime for the offender to have knowledge that an investigation is in progress or is likely to be instituted.  It is also worth noting that Mr. Banks' reliance on his supposed PTSD trance to explain his unusual behavior was not included in the evidence before the jury for his tampering with evidence charge.  Mr. Banks only testified that he suffered from PTSD during his bench trial for voyeurism, not during his jury trial for tampering with evidence.

{¶ 27} Tampering with evidence also "requires proof that the defendant intended to impair the value or availability of evidence that related to an existing or likely official investigation or proceeding." *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, syllabus.  Thus, the State had to prove that Mr. Banks concealed his license plate number purposely to impair its availability as evidence in the likely voyeurism investigation.

{¶ 28} We find no merit in Mr. Banks' argument that no investigation had commenced at the time he concealed his license plate number.  The State did not have to prove that an official investigation existed, but rather that one was *likely*. *See id.*  We have already concluded above that a jury could have reasonably inferred from Mr. Banks' conduct that he knew an investigation into the voyeurism incident was likely.  Furthermore, Mr. Banks has not directed us to any law that supports his arguments that: (1) the concealment of potential evidence must last beyond the timeframe of a couple minutes to support a conviction for tampering with evidence, or (2) one cannot be convicted of tampering with evidence if the concealed evidence is the rear license plate number on a vehicle while the front license plate number is not concealed. Thus, we conclude that these arguments are meritless as well.

{¶ 29} Upon review of the evidence presented in a light most favorable to the prosecution, we conclude that the State satisfied its burden of production as to the offense of tampering with evidence.  Furthermore, any rational trier of fact could have found all of the essential elements of tampering with evidence proven beyond a reasonable doubt.  Our conclusion here is specifically limited to the unique facts and circumstances of this case.

*State v. Banks,* 9th Dist. No. 16CA00844-M, 2017-Ohio-8777, 2017 WL 0662851.  ECF Doc. 18-1 at 108-113.

After applying the first layer of review under *Jackson* to the facts of this case, we must conclude that there was sufficient evidence to convict Banks of the elements of tampering with evidence beyond a reasonable doubt.  As with the voyeurism conviction, Banks does not argue that the Ohio courts misstated Ohio law or that certain key facts did not support the tampering with evidence conviction.  Rather, he asks that we look at the evidence in a light most favorable to him – something we are not permitted to do.  The state was required to prove that Banks: 1) knew that an investigation was in progress, or was about to be or likely to be instituted; and 2) concealed [his license plate] with purpose to impair its value or availability as evidence in such proceeding or investigation * * *."  Ohio Rev. Code 2921.12(A)(1).  As stated by the Ohio Court of Appeals, the jury was permitted to infer the intent required by R.C. 2921.12(A)(1) from Banks's actions and demeanor *after* a crime had been committed.  *State v. Price,* 9th Dist. Summit No. 28291, 2017-Ohio-4167, ¶ 18.  The evidence showed that Banks quickly left the Target store where the victim identified him as the man who had been using his cell phone to look at her in her dressing room.  Once in the parking lot, Banks removed his shirt and covered his rear license plate.  Given this highly unusual behavior following an accusation of voyeurism, Ohio law permitted the jury to infer that Banks knew that an investigation was likely and that he covered his license plate to impede that investigation.

At trial and in his direct appeal, Banks argued for a different interpretation of the evidence.  He testified that he had quickly left the Target and covered his rear license plate due to post traumatic stress disorder ("PTSD").  ECF Doc. 18-1 at 55-57.  But the jury was not required to accept Banks's interpretation of the evidence.  The jury was also permitted to infer

that Banks quickly left Target and covered his license plate to avoid being investigated for voyeurism.  And, for purposes of habeas review, we are not permitted to interpret the evidence in Banks's favor.  To the contrary, we are required to consider it in a light most favorable to the prosecution.  In such a light, it is clear that a rational juror could have found the essential elements of "tampering with evidence" beyond a reasonable doubt.

As to the second layer of AEDPA review, the Ohio Court of Appeals' determination that there was sufficient evidence to permit a rational juror to find Banks guilty of tampering with evidence beyond a reasonable doubt was *not* "objectively unreasonable."  *See Stewart v. Wolfenbarger*, 595 F.3d at 653.  The Ohio courts' conclusion that Banks knowingly hid his license plate to impair its availability for a likely investigation of voyeurism was hardly unreasonable.  AEDPA requires us to defer to that conclusion.

I find that a rational trier of fact could have found that the evidence at Banks's trial proved the necessary elements of voyeurism and tampering with evidence, and that the Ohio Court of Appeals' conclusion that sufficient evidence supported those convictions was not "objectively unreasonable."

Banks has failed to identify any decision of the Ohio courts that was contrary to or an unreasonable application of clearly established federal law or that represented an unreasonable conclusion of facts based on the evidence before the court.  Under the circumstances, we are required to deny him habeas relief on his Ground One claim.  Should the Court decide to review Banks's Ground One claim on the merits, I recommend it be dismissed for lack of merit.

## VII.   Recommendation Regarding Certificate of Appealability

### A.   Legal Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal.  28 U.S.C. § 2253(c).  "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Supreme Court has interpreted this standard to mean that the "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'"  *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim.  *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

### B.   Analysis

When a petition is to be dismissed in whole or part on a procedural basis, the inquiry under § 2253(c) is two-fold.  In such cases, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 485.  As the Supreme Court explained, "[w]here a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.  In such a circumstance, no appeal would be warranted."  *Id.* at 486.

If the Court accepts my recommendations, Banks will not be able to show that the Court's rulings on his Ground One and Ground Two claims are debatable among jurists of reason. Thus, I recommend that a certificate of appealability not be issued on Banks's claims.

## VIII. Recommendations

Because Banks's Ground One and Ground Two claims were procedurally defaulted and because his Ground One claim lacks merit, I recommend each of his claims be DISMISSED and that his petition for writ of habeas corpus be DENIED. I further recommend that Banks not be granted a certificate of appealability.

Dated: June 9, 2020

Thomas M. Parker
United States Magistrate Judge

_____

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981). See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).